IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Deangelo McClain and Efferson Williams, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| -*vs*- | ) ) ) | No. 25-cv- |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) ) ) ) ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiffs Deangelo McClain and Efferson Williams, by counsel, alleges as follows:

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and the Illinois Civil Rights Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 *et seq*. The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. Plaintiff Deangelo McClain is an inmate at the Cook County Jail assigned booking number 2020-1104132. McClain has been incarcerated since November 2020 and uses a wheelchair to move from place to place because of gunshot injuries sustained in October of 2020.

3. Plaintiff Efferson Williams is an inmate at the Cook County Jail assigned booking number 2021-1007129. Williams has been an inmate since

October 2021 and uses a wheelchair to move from place to place because of a T-5 spinal cord injury that occurred in 2017 because of gunshot wounds.

4. Plaintiffs McClain and Williams were members of the Rule 23(b)(2) and 23(b)(3) classes in *Walker v. Dart*, 20-cv-261.

5. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

6. Defendant Cook County, in collaboration with the Sheriff as outlined in the January 2011 Inter-Agency Agreement, is responsible for accommodating the needs of disabled prisoners remanded to the Sheriff of Cook County and is a necessary party in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F. 3d 947 (7th Cir. 2003).

7. Cook County owns Cermak Health Services Facility, which is used to provide health services for and house detainees on the Cook County Department of Corrections campus.

8. Construction of the facility commenced after July 26, 1992.

9. A pedestrian and materials access tunnel serves the Cermak facility at the basement level.

10. The Cermak ramp connects the building to the tunnel and is used by civilian and security employees to enter Cermak, transport inmates, and move equipment.

11. Inmates may traverse the Cermak tunnel via the ramp to obtain medical services or be transported to court.

12. Defendants Sheriff and Cook County have received federal funds since at least 1988. These funds have been used to construct capital projects at the Cook County Department of Corrections and to provide medical care, including drug treatment, to inmates.

13. Plaintiffs are housed in the Jail's Residential Treatment Unit (RTU). Each plaintiff, on average, moves from the RTU to Cermak at least once every month and must traverse the Cermak ramp.

14. Defendants know the Cermak ramp does not comply with the ADA Structural Standards. In March 2018, Ellen Stoner was hired by Cook County to assess the Cermak ramp. Ms. Stoner prepared a report noting the "run exceeds code requirements" and that to make the ramp compliant with the ADA, handrails and a "landing 30' from the top of ramp" is necessary. This report is below:



15. Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation (GEC), to assess the ADA compliance of the Cermak Health Services Facility.

16. On December 6, 2023, GEC submitted the Corridor Ramp Accessibility Assessment to Cook County.

17. Through the utilization of a three-dimensional LIDAR system, GEC's assessment found the Cermak rise has a rise of 32.4 inches – 2.4 inches over the maximum rise set forth in the ADA structural standards.

18. The ramp is continuous without a landing, lacked handrails until early 2023, and the later-installed handrails do not extend 12 inches beyond the ramp.

19. The structural barriers prevent plaintiffs and similarly situated wheelchair-users from using the ramp similar to non-disabled inmates.

20. Plaintiff McClain testified in a deposition on April 26, 2024, that moving up the ramp "takes all of my energy away from me" and has made him "use the bathroom on myself numerous times." Plaintiff McClain also testified that moving down the ramp is equally hard because his wheelchair rolls fast, causes his hands to burn, and that he has sustained other physical injuries such as a dislocated thumb.

21. Plaintiff McClain has filed at least one grievance about how he is unable to traverse the ramp on the same basis as non-disabled individuals. This grievance also complains that the absence of handrails made it even more difficult for him to traverse the ramp.

22. Plaintiff Efferson Williams testified in a deposition on April 25, 2024, regarding the inability to move up and down the ramp on the same basis as non-disabled inmates. During this deposition plaintiff Williams described descending the Cermak ramp unassisted on December 6, 2023, and that to avoid slamming into a wall he was forced to use his bare hands to break which caused burns that were present during the April 25, 2024, deposition.

23. Plaintiff Williams also has been administered bacitracin by the medical staff because of the burns to his hands caused by rolling up and down the Cermak ramp.

24. Plaintiff Williams has lost control descending the Cermak ramp on multiple occasions. Traversing the ramp, due to the slope and lack of landing to rest, has also caused strain on plaintiff's bladder and bowels. On several occasions traversing the Cermak ramp plaintiff has urinated and/or defecated on himself because of the strain caused to his muscles. If the ramp had handrails, was not as steep, and had a landing to rest, plaintiff, at all relevant times, would be able to traverse the ramp independently on the same basis as non-disabled inmates.

25. Plaintiff Williams has also filed grievances complaining of his inability to traverse the Cermak ramp on the same basis as non-disabled inmates because of the obvious structural barriers.

26. Despite knowing that the ramp is not compliant with the ADA Structural Standards, defendants continue to direct wheelchair-users to traverse the non-compliant Cermak ramp. The refusal of defendants to correct this obvious physical barrier violates the rights of plaintiffs and similarly situated inmates. Defendants, at all relevant times, have been deliberately indifferent to the rights of plaintiffs and similarly situated wheelchair-users.

27. Plaintiffs McClain and Williams seek damages individually and requests that the Court certify the following classes:

> a. Pursuant to Rule 23(b)(2), all inmates at Cook County Jail prescribed a wheelchair by a jail medical provider and who traversed the Cermak ramp; and

    b. Pursuant to Rule 23(b)(3) a class of all Cook County Jail detainees who have been assigned a wheelchair by a jail medical provider and traversed the Cermak ramp from May 5, 2018 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time.

28. Plaintiffs demand trial by jury on their claim for damages.

It is therefore respectfully requested that judgment be entered in favor of plaintiffs for appropriate compensatory damages, that the Court award appropriate relief under the Restoration Act available after January 1, 2024, that the Court certify this case under Rules 23 (b)(2) and (b)(3), and that the Court grant whatsoever other relief may be appropriate, including an award of attorney's fees and costs. In the event the plaintiffs do not establish damages, plaintiffs seek nominal damages.

        /s/ <u>Patrick W. Morrissey</u>
            ARDC No. 6309730
            Thomas G. Morrissey, Ltd.
            10257 S. Western Ave
            Chicago, Illinois 60643
            (773) 233-7901
            *Attorney for Plaintiffs*